## WILLIAM BOSWELL *v.* EDWARD M. GREEN.

1. To a declaration in the *detinuit* against a sheriff, he pleaded property
in the defendant in the executions under which he took the goods, and by
several avowries alleged the *precise time*, when he received the executions
and when he seized the property, and that the goods were *then* the property
of defendant in execution; the plaintiff traversed by replication in the usual
form. and issue was thereupon joined. The jury found that, *at the time
alleged in the declaration*, the property in the goods was in the plaintiff:
held, that this was not error.

2. The avowries admit the taking, and traverse property in the plaintiff; what precedes this traverse is inducement merely, and not traversable.

3. The court cannot notice matter alleged for error, unless it appears on the record.

4. For the purpose of selling the effects and paying partnership debts, each partner is considered the authorized agent of the firm, and unless he acts fraudulently, or in violation of an agreement or term of the partnership, and the party with whom he deals knows the fact, courts will not interfere.

5. The legal obligation to pay the price is a good consideration for the sale of goods.

6. The title to personal property does not pass till the sale is completed; but whether the sale is completed or not, is a question of intention.

7. Where the owner of property lying on a wharf orders the wharfinger to deliver it to a purchaser, and the wharfinger agrees to deliver it on the purchaser's paying the wharfage, the delivery is complete, as far as the vendor and vendee is concerned.

Error to Mercer Circuit.

An action of replevin was brought by Edward M. Green against William Boswell, sheriff, to recover a quantity of coal, levied upon by said Boswell, as the property of Dewar, Mein & Kay.

The coal was lying on the wharf of Jonathan S. Fish & Co., and Green claimed it, by virtue of a bill of sale executed to him by Kay, one of the partners, in the name of the firm.

The sheriff gave bond, retained the coal in his possession, and sold it by virtue of the execution under which he levied upon it.

The case was tried before a jury, at the Mercer Circuit, May term, 1855, and a verdict rendered for the plaintiff for $2866.43 damages, with costs.

The facts in the case, and the grounds relied upon for reversal, are fully stated in the opinion of the court.

Argued at November term, 1855, before the CHIEF JUSTICE, and Justices ELMER, POTTS, and HAINES ; *Scudder* and *Gilchrist*, for plaintiff in error, *Beasley*, for defendant.

POTTS, J. This was an action of replevin, brought by Edward M. Green against William Boswell, sheriff of the

county of Mercer.   Boswell, by virtue of executions in his
hands, seized a lot of coal, lying at the coal yard of Fish &
Co., as the property of Dewar, Mien & Kay, the defendants
in execution.   Green thereupon issued his writ of replevin,
claiming to have purchased the coal from Dewar, Mein &
Kay.   The sheriff gave the usual bond ; the coal was left
in his possession, and subsequently sold for the benefit of
the execution creditors.   On the trial, the verdict was for
Green, the plaintiff, and the jury assessed his damages at
$2866.43 and costs.   The several matters assigned as errors
will be noticed in the order in which they were discussed
on the argument.

I. It is insisted that the jury have not passed upon all the
issues made by the pleadings.

The declaration is in the *detinuit ;* that the defendant on
the first of September 1854, took and unjustly detained the
goods, &c.

The defendant pleaded—1, *non cepit ;* 2, that the said
goods, &c., at the said time when, &c., were the property
of Dewar, Mein & Kay, and not of the said Green.

*Avowry* 1. That he was sheriff, &c.; and that on the 7th
September, 1854, an execution in favor of G. & D. issued,
&c., against Dewar, Mein & Kay, was at seven A. M. deliv-
ered to him, and on the 7th September, &c., he seized the
coal, as the property of D. M. & K. ; and that the said
goods, &c., at the time of seizing and taking the same, were
the goods, &c., of D. M. & K., and not the goods, &c., of
said Green

2. Same as above, except that execution was in favor of
G. D. & C., and delivered at six P. M. on 7th September.

3. Same as first, except that the said goods, &c., at the
time of the delivery of the execution in this avowry men-
tioned to the defendant, were the goods of James Dewar,
Robert Mein, and William Kay, to wit, at seven A. M. of
7th September, 1854, and not the goods of Green.

4. Same as last, except that execution was in favor of

G. D. & C., and delivered at 6 A. M. on 7th September, 1854.

The plaintiff, as to the first plea, joins issue; as to the second, replies that at the time when, &c., the property was in the plaintiff; and to the avowries, that at the time when, &c., the property was in the plaintiff, in manner and form as he hath in his declaration aforesaid alleged. *Similiter* by the defendant.

The verdict is that, as to the first issue joined, the defendant did take the goods, &c., and as to the issues secondly, thirdly, fourthly, fifthly, and sixthly, above joined, they say, that at the time in that behalf alleged in the declaration, the property in the said goods, &c., was in the said plaintiff, in manner and form as he hath in his said declaration alleged; and they assess the damages of the said plaintiff, by reason of the premises, over and above his costs and charges by him about his suit in that behalf expended, to $2866.43, and costs six cents. Judgment for damages as found.

The point of the objection is, that the jury should have found specifically whether the goods were or were not the property of the plaintiff on the 7th September, 1854, at the hours mentioned in the several avowries. But the objection is not well founded. The issue joined, the material question of fact upon which the jury were to pass, was whether the plaintiff had such a title to the property as would enable him to maintain his action. The *gravamen* of the charge in the declaration was the *unlawful* taking of the property of the plaintiff. The several avowries admit the taking, and traverse property in the plaintiff. What precedes this traverse, to wit, the allegation of the delivery of the executions to the sheriff, the time when they were delivered, and when the seizure was made, and that the goods were then the property of Dewar, Mein & Kay, &c., is matter of inducement merely, matter going to show how, by what means, the defendant claimed to

have acquired the title, *Bemus* v. *Beekman,* 3 *Wend.* 672 ; *Prosser* v. *Woodward,* 21 *Wend* 207, and not traversable. Therefore the replication to the several avowries passes by the matters of inducement, and reaffirms title to the property in the plaintiff. So that the issue was joined upon that single matter, affirmed on one side, and denied on the other.

To maintain the issue on his part, it was doubtless necessary for the plaintiff to prove on the trial, in answer to the case made by the defendant, that his title was acquired previous to the delivery of either of the executions to the sheriff; for otherwise he would not have maintained his allegation, that the taking by the defendant was *unlawful,* that the property at the time was in the plaintiff. The sheriff claimed the coal by virtue of executions in his hands against Dewar, Mein & Kay. The plaintiff, Green, claimed them as a purchaser from the same parties; and, as an execution binds the goods of a defendant, both as against him and those claiming under him, from the time of its delivery to the sheriff, *Newell v. Sibley,* 1 *South.* 381, it became the important question in the cause, whether the executions, or either of them, had been delivered to the sheriff prior to the completion of the sale of the coal to the plaintiff; but this resolved itself into the simple issue of title or no title in the plaintiff; and the response of the jury, that the property was in the plaintiff, directly met and decided the issue of fact.

II. Another objection taken is, that the verdict was for the value of the goods, whereas the counsel for the defendant insists it should have been for damages for the detention merely. But it is sufficient to say that there is no error manifest upon the record. The matter alleged as error does not appear.

III. Again, it is alleged for error, that the judge charged the jury that Kay alone, without the assent of his copart-

ners, had a right to sign a bill of sale for the coal. The bill of sale was as follows :

"This is to certify, that Edward M. Green has this day purchased of us all the coal, our property, now on the wharf of Jona. S. Fish & Co., at $4.70 per ton for the egg and stove coal, and $4 for chestnut; and we hereby direct the said Jona. S. Fish & Co. to deliver possession of said coal to said Green.

Dated Sept. 6, 1854.          Dewar, Mein & Kay."

The evidence was, that the coal had been purchased of Green by the firm, and lay on Fish & Co's wharf; that the firm were embarrassed at the time, and gave their notes for the amount to Green ; that the notes were unpaid. Kay swears that, on the 5th September, a note of that date was written, by the direction of the firm, to Green, advising him that they were unable to get along, and requesting him immediately to appropriate the coal to his own benefit or as his own property ; that Cochrane, their clerk, wrote the note; that he, Kay, and Mein were present when it was written; and he presumed Dewar knew of its being written, for they had talked the matter over previously ; that Green came on the 6th, and he, Kay, made and executed the above bill of sale, and gave it to Green, none of the other partners being present or being consulted; that Green paid nothing, and nothing was said about his taking up the notes which the firm had given him for the coal. Cochrane testifies that Dewar knew nothing of the giving of the bill of sale. Mein testi fies that the firm failed on the 5th and 6th September; that the firm did not sell the coal; that he was never consulted about the sale, never signed any bill of sale, and that the firm never received any consideration for it.

But, nevertheless, the charge complained of was right. Each partner has an entire control over the personal property of the partnership. For the purpose of selling the effects, and paying partnership debts, he is considered the

authorized agent of the firm If he acts fraudulently, or in violation of any agreement or term of the partnership, and the party with whom he deals is cognizant of the fact, courts will interfere and give relief; but there does not appear to have been any fraud or any excess of authority in this transaction. The effect of it was simply to prefer, so far as the coal would go, the creditor from whom it had been purchased. *Pierson* v. *Hooker*, 3 *Johns. R.* 68; *Pearpoint and Lord* v. *Graham*, 4 *Wash, C. C. R.* 234; *Harrison* v. *Sterry et al.*, 5 *Cranch* 289; 1 *Parsons on Con.* 156, *note w*, 3 *Kent's Com.* 44; *Tillou* v. *Britton*, 4 *Halst.* 135.

IV. But it is contended that there was no consideration given for the coal, because no money paid at the time, nor promise of payment by the purchaser, nor endorsement of credit on the notes, a part of which had been discounted or passed away; and that there was, therefore, error in the charge, "that the bill of sale was for a valuable consideration, and not fraudulent and void as against creditors."

Upon its face, the bill of sale was for a consideration, a fixed price per ton for the several kinds of coal; and in every sale of personal property the law implies a promise to pay, raises an obligation, so that the vendee shall compensate the vendor in the amount of the price or value agreed on, if any, and if no value is fixed, then for the actual value, to be ascertained. This legal obligation to pay is a good consideration for the sale, gives it validity, and relieves it from the imputation of fraud. Besides, as already intimated, there was nothing in the transaction that wore the semblance of fraud. The firm had used part of the coal, and Green had used part of the notes; the balance of the coal sold to Green amounted to about $2800; the balance of notes remaining in Green's hands, or under his control, amounted to nearly $2200; and he was of course responsible as endorser on those he had

got discounted; so that there was no doubt of his becoming in the end a creditor of the firm to a much larger amount than their claim against him.

V. Another ground of error assigned is, that the court charged the jury, " that it was not necessary to pass the title to the coal, that the whole quantity should be ascertained; and that the title to the coal, if the jury believed the witnesses, did vest in the plaintiff before the aggregate price was known; and that the coal was not till then at the risk of the seller, but at the risk of the said Green, after the delivery by J. S. Fish & Co.;" whereas the judge ought to have charged, that it was necessary to pass the title, that the whole quantity of coal should be ascertained, and that the title did not vest in the plaintiff before the aggregate price was known, and that there was no delivery by Fish & Co.

The quantity of coal was not ascertained at the time of the making and delivery of the bill of sale of the 6th September. It lay on the wharf of Fish & Co. All that Kay in the name of the firm, did was to deliver the paper, at the time it was signed, to Green. Fish says, " on the morning of the 6th September, Green called on me with the order of that date. I told him I had no objection to giving the coal to him, subject to the claim of Fish & Co. for $108.18 for wharfage. I gave him possession, subject to our claim, by signing at the foot of the order this note:

" Possession delivered of the above mentioned coal in compliance of the above order, subject to a payment of $108.18 for unloading and wharfage on this coal. September 6, 1854.                                    J. S. Fish & Co."

The coal remained where it lay, and on the morning of the 7th was levied on by the defendant under the executions in his hands, and subsequently sold by him, to wit, 464 tons of egg coal, 133 tons of chestnut, and 25 1-2 tons of stove coal. The sheriff paid Fish & Co., the $108.18 the morning after the sale.

These are substantially the facts proved. The question is, was the sale and delivery to Green complete, so as to vest the title in him on the 6th September. The defendant's counsel insists it was not, and the title did not vest, because the quantity of coal had not been ascertained.

There is abundant authority for the doctrine, that the property does not pass absolutely unless the sale be completed; that it is not completed until the happening of any event expressly provided for, or so long as anything remains to be done to the thing sold to put it into a condition for sale, or to identify it, or discriminate it from other things, or to determine its quantity, if the price depends on this, unless this is to be done by the buyer alone. 1 *Parsons on Cont.* 441; *Simmons* v. *Swift*, 5 *Barn. & Cress.* 857; *Alexander* v. *Gardner*, 1 *Bingham's N. C.* 671, per Justice *Park;* *Swanwick* v. *Sothern*, 9 *Adol. & Ellis* 895, per *Lord Denman;* *Hanson* v. *Meyer,* 6 *East* 614; *Rapelye* v. *Mackie*, 6 *Cowen* 250; *Outwater* v. *Dodge*, 7 *Cowen* 85; *Ward* v. *Shaw*, 7 *Wend.* 404; and see cases collected in *Ross on Contracts, p.* 1, &c.

But these are all cases upon the construction of contracts, where the intention of the parties was the real question in controversy. Where it is clear, by the terms of the contract, that the parties intended that the sale should be complete before the article sold is weighed or measured, the property will pass before this is done. *Tarling* v. *Baxter*, 6 *Barn. & Cress.* 360, per *Bayley, J.; Logan* v. *Mesurier*, 6 *Moore's P. C. Cases* 131, per *Lord Brougham; Riddle* v. *Varnum*, 20 *Pick.* 280. It must be so. There is nothing illegal in such a contract; and where contracts are legal, made in good faith, and not contrary to public policy, courts are bound to give them effect according to the clearly expressed intention of the parties who make them.

In this case the bill of sale, the order for delivery, and the memorandum of delivery were in writing. The intention to sell and pass the title and possession at the time

was clear upon the face of the papers, and was supported by the evidence. The legal inference, from the facts and documents before the court, undoubtedly was that the title passed, and so the court told the jury. There is no error in this.

VI. The last matter assigned for error which it is necessary to notice is that the court told the jury that Green was entitled to the immediate possession of the coal, when the same was delivered to him by Fish & Co., although delivered subject to the payment of wharfage, &c. There was no error in this. When the wharfinger executed the memorandum which was read in evidence, that paper operated as a delivery, an attornment to Green; and Green then had the same possession that Dewar, Mein & Kay had before, a possession subject merely to lien for wharfage, &c., if Fish & Co. chose to enforce it. The delivery, the right of property, and the right of possession was complete, so far as the parties to this suit are concerned; and that is all that is fairly inferrible from the charge, and all that was necessary to support the action.

The judgment should be affirmed.

The CHIEF JUSTICE, and ELMER and HAINES, Justices, concurred.

CITED *in Fox* v. *Prickett*, 5 *Vr.* 18; *Hires* v. *Huff*, 10 *Vr.* 10.